UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | | |
|---|---|---|
| BRENDA MARCUS, | ) | No. EDCV 09-1289 CW |
| Plaintiff, | ) ) | DECISION AND ORDER |
| v. | ) ) | |
| MICHAEL J. ASTRUE, Commissioner, Social Security Administration, | ) ) ) ) | |
| Defendant. | ) ) | |

The parties have consented, under 28 U.S.C. § 636(c), to the jurisdiction of the undersigned Magistrate Judge. Plaintiff seeks review of the Commissioner's denial of disability benefits. As discussed below, the court finds that judgment should be entered in favor of Defendant, affirming the Commissioner's decision.

### I.   BACKGROUND

Plaintiff Brenda Marcus was born on October 7, 1960, and was forty-eight years old at the time of her latest administrative hearing. [Administrative Record ("AR") 256, 326.]  She has a high

school education and past relevant work experience as an office manager, paper salesperson and purchasing manager. [AR 57, 257.] Plaintiff alleges disability on the basis of a seizure disorder, depression, anxiety, and pain in her neck, back, hip and leg. [AR 258, 262.]

## II.  **PRIOR PROCEEDINGS**

Plaintiff applied for supplemental security income ("SSI") on July 6, 2004, alleging disability since June 11, 2003.  [AR 11.] After the application was denied initially and upon reconsideration, Plaintiff requested an administrative hearing, which was held on November 15, 2006, before Administrative Law Judge ("ALJ") F. Keith Varni. [AR 253.] Plaintiff appeared with counsel and testified. [AR 254.] The ALJ denied benefits in a decision filed on December 18, 2006. [AR 8.] When the Appeals Council denied review on March 24, 2007, the ALJ's decision became the Commissioner's final decision. [AR 3.]

Plaintiff filed a complaint in the district court on June 6, 2007 (Case No. EDCV 07-597 CW).  On March 10, 2008, the court issued a decision and order remanding the matter for further administrative proceedings.

A second administrative hearing was held on January 6, 2009, before the same ALJ. [AR 324.]  Plaintiff's counsel appeared without Plaintiff, and testimony was taken from vocational expert Joseph Mooney. [AR 326.]  The ALJ denied benefits in a decision dated March 4, 2009. [AR 275.]

The present complaint was lodged on July 7, 2009, and filed on July 15, 2009.  On January 13, 2010, Defendant filed an Answer and Plaintiff's Administrative Record ("AR").  On March 15, 2010, the

parties filed their Joint Stipulation ("JS") identifying matters not in dispute, issues in dispute, the positions of the parties, and the relief sought by each party. This matter has been taken under submission without oral argument.

### III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's (or ALJ's) findings and decision should be upheld if they are free of legal error and supported by substantial evidence. However, if the court determines that a finding is based on legal error or is not supported by substantial evidence in the record, the court may reject the finding and set aside the decision to deny benefits. See Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001); Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995)(per curiam).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, a court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Id. "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720-721; see also Osenbrock, 240 F.3d at 1162.

## IV. DISCUSSION

### A. THE FIVE-STEP EVALUATION

To be eligible for disability benefits a claimant must demonstrate a medically determinable impairment which prevents the claimant from engaging in substantial gainful activity and which is expected to result in death or to last for a continuous period of at least twelve months. Tackett, 180 F.3d at 1098; Reddick, 157 F.3d at 721; 42 U.S.C. § 423(d)(1)(A).

Disability claims are evaluated using a five-step test:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996); see also Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520, § 416.920. If a claimant is found "disabled" or "not disabled" at any step, there is no need to complete further steps. Tackett, 180 F.3d 1098; 20 C.F.R. § 404.1520.

Claimants have the burden of proof at steps one through four, subject to the presumption that Social Security hearings are non-adversarial, and to the Commissioner's affirmative duty to assist

claimants in fully developing the record even if they are represented by counsel. Tackett, 180 F.3d at 1098 and n.3; Smolen, 80 F.3d at 1288. If this burden is met, a prima facie case of disability is made, and the burden shifts to the Commissioner (at step five) to prove that, considering residual functional capacity ("RFC")[1], age, education, and work experience, a claimant can perform other work which is available in significant numbers. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. § 404.1520, § 416.920.

**B. THE ALJ'S EVALUATION IN PLAINTIFF'S CASE**

Here, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her disability application date (step one); that Plaintiff had "severe" impairments, namely a history of seizure disorder, history of migraine, history of fibromyalgia, and history of depression, anxiety, and panic disorder(step two); and that Plaintiff did not have an impairment or combination of impairments that met or equaled a "listing" (step three). [AR 280.] The ALJ found Plaintiff had an RFC for light work, except the work should consist of simple, repetitive, and non-public tasks. [AR 281.] The vocational expert testified that a person with Plaintiff's RFC could not perform Plaintiff's past relevant work (step four). [AR 283.] The vocational expert also testified that a person with Plaintiff's RFC could make a vocational adjustment to other work existing in significant numbers,

---

[1] Residual functional capacity measures what a claimant can still do despite existing "exertional" (strength-related) and "nonexertional" limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.s. 5-6 (9th Cir. 1989). Nonexertional limitations limit ability to work without directly limiting strength, and include mental, sensory, postural, manipulative, and environmental limitations. Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993); Cooper, 800 F.2d at 1155 n.7; 20 C.F.R. § 404.1569a(c). Pain may be either an exertional or a nonexertional limitation. Penny, 2 F.3d at 959; Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985); 20 C.F.R. § 404.1569a(c).

including housekeeper, cleaner, and hand packager (step five). [AR 284.]  Accordingly, the ALJ found that Plaintiff was not "disabled" as defined by the Social Security Act. [Id.]

**C.   ISSUES IN DISPUTE**

The parties' Joint Stipulation identifies the following disputed issues:

1.  Whether the ALJ complied with the district court's remand order;
2.  Whether the ALJ properly considered the state agency psychiatrist's findings;
3.  Whether the ALJ properly considered the state agency physician's opinion;
4.  Whether the ALJ properly considered the consultative examiner's opinion;
5.  Whether the ALJ properly considered the Plaintiff's residual functional capacity; and
6.  Whether the ALJ posed a complete hypothetical question to the vocational expert.

[JS 3.]

**D.   ISSUE ONE: CONSIDERATION OF DR. BELEN'S OPINION ON REMAND**

In Issue One, Plaintiff contends that the ALJ failed to comply with the court's decision and order issued on March 10, 2008, directing remand for consideration of the opinion of Dr. Nenita Belen, Plaintiff's treating psychiatrist. [JS 3-4.]

According to the record, Plaintiff received psychiatric treatment from Dr. Belen, from July 2003 to July 2004. [AR 143, 156.] Upon a mental status examination, Dr. Belen diagnosed Plaintiff with a depressive order not otherwise specified, and ruled out major

depression recurrent. [AR 174.] Plaintiff was prescribed Effexor with refills. [AR 156, 174.]

With regards to mental functioning, Plaintiff's treating physicians did not assess any functional limitations specific to Plaintiff's condition, except diagnosing a Global Assessment of Functioning ("GAF") score of 65.[2] [AR 178.] No further description was provided.

In the latest administrative decision, the ALJ considered the opinion of Dr. Belen, and found that Plaintiff's depression, anxiety, and panic disorder were "severe" impairments at step two of the five-step evaluation. [AR 280.] Accordingly, the ALJ continued with the evaluation, and found that Plaintiff could perform light work consisting of simple, repetitive, non-public tasks. [AR 281.]

Plaintiff argues that the ALJ's evaluation of Dr. Belen's opinion failed to comply with the court's order, because the ALJ failed to specifically reference Dr. Belen's opinion in his decision. [JS 4.] In his initial decision, the ALJ found that Plaintiff's mental health problems were not severe. [AR 13.] The court determined that this decision was in error due to the ALJ not having adequately considered Dr. Belen's opinion. [AR 299.] In the latest decision, the ALJ concluded that Plaintiff's depression, anxiety, and panic disorder were severe impairments, but did not extensively reference Dr. Belen's opinion. [AR 280.]

---

[2] A GAF score represents a clinical evaluation of an individual's overall level of functioning. Scores in the range of 61 through 70 denote some mild symptoms, such as depressed mood or mild insomnia, or some difficulty in social, occupational, or school functioning, such as occasional truancy or theft within the household, but indicate that the subject is generally functioning pretty well and has some meaningful interpersonal relationships.

However, the ALJ's new finding of severity is accounted for and paralleled by Dr. Belen's diagnosis. [AR 174, 178.]  As such, the court may reasonably infer that the ALJ complied with the remand order by accounting for and relying on Dr. Belen's opinion.  Although Plaintiff seems to contend otherwise, the ALJ does not have to recite the words, "I considered Dr. Belen's opinion for the following reasons. . . "  Such an incantation is not required where, as here, the court can draw a reasonable inference from the ALJ's opinion.  See Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989).  Moreover, Plaintiff fails to identify any aspect of Dr. Belen's opinion that the ALJ failed to consider.  As such, Plaintiff's claim is without merit.

**E.    ISSUE FOUR: CONSIDERATION OF EXAMINER DR. MAZE'S OPINION**

On November 4, 2004, Dr. Sarah L. Maze completed a neurological evaluation of Plaintiff, who complained of head injury and seizures. [AR 195-198.] Dr. Maze noted that Plaintiff was involved in a motor vehicle accident twenty years ago, and that her current medications consisted of Depakote, Effexor, Tylenol with codeine, and Fiornal. [AR 195-196.]  Dr. Maze concluded that Plaintiff's seizures were well controlled on medication, and that she is able to lift, carry, stand, sit, and walk without limitation, but is precluded from working at heights, around dangerous machinery, and operating a motor vehicle. [AR 198.]  Plaintiff argues that the ALJ failed to consider and discuss Dr. Maze's opinion, particularly since the ALJ did not specify Plaintiff's environmental limitations. [JS 13.]

The ALJ did not fail to consider Dr. Maze's opinion. The ALJ found that Plaintiff could perform light work consisting of simple, repetitive, non-public tasks [AR 281.]  This residual functional capacity ("RFC") is consistent with and encompasses the environmental

restrictions noted by Mr. Maze. Moreover, none of the jobs cited by the ALJ as indicative of Plaintiff's ability to perform work in the national economy – housekeeper, cleaner, and hand packager – requires Plaintiff to work at heights, around dangerous machinery, or operate a motor vehicle. See Dictionary of Occupational Titles ("DOT") Sections 301.137-010 (housekeeper), 323.687-014 (cleaner), and 559.687-074 (hand packager). Accordingly, it is reasonable to infer that the ALJ considered Dr. Maze's opinion in determining Plaintiff's RFC, and Plaintiff has stated no cause for remand on this ground.

**F.   ISSUES TWO AND THREE: STATE AGENCY PHYSICIAN AND PSYCHIATRIST'S FINDINGS**

In Issue Two, Plaintiff contends that the ALJ improperly failed to consider the evaluation completed by a state agency psychiatrist. [JS 10-12.] In Issue Three, Plaintiff contends that the ALJ erred in failing to consider the evaluation completed by a state agency physician. [JS 12-14.]

On November 29, 2004, Dr. May, the state agency physician, completed a Physical Residual Functional Capacity Assessment ("PRFCA") based on review of the record. [AR 203-210.] Dr. May indicated that Plaintiff should never engage in climbing or crawling, and can occasionally perform activities that require balancing, stooping, kneeling, and crouching. [AR 205.] In addition, Dr. May found that Plaintiff should avoid unprotected heights, machinery, and driving automotive equipment. [AR 207.]

On December 9, 2004, Dr. Mallare, the state agency psychiatrist, completed a Psychiatric Review Technique Form ("PRTF") and a Mental Residual Functional Capacity Assessment ("MRFC") based on review of the record. [AR 213-227, 228-231.] Dr. Mallare concluded that

Plaintiff was "moderately limited" in the following areas: the ability to understand and remember very detailed instructions; the ability to carry out detailed instruction; the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual; and the ability to complete a normal workday and workweek without interruptions while performing at a consistent pace. [AR 228-229.] The evaluation indicated that Plaintiff was "not significantly limited" in other listed areas of mental functioning. [Id.] The evaluation concluded that Plaintiff had adequate memory, concentration, and understanding to do "simple, repetitive tasks" in an environment with others. [AR 230.]

Plaintiff argues that the ALJ committed reversible error by failing "to discuss or even mention" the state agency doctors' findings that Plaintiff has postural and environmental limitations, and is moderately limited in her ability to understand and remember detailed instructions and in her ability to sustain concentration and persistence. [JS 6-7, 10; AR 228.] Petitioner's claims are without merit.

As to Issue Two, Dr. Mallare stated that Plaintiff is able to do "simple, repetitive tasks," the very words the ALJ uses in his decision. [AR 230, 281.] As to Issue Three, the postural and environmental limitations Dr. May indicated fit into the scope of light work that the ALJ found within Plaintiff's capacity. [AR 281.] Similar to Issues One and Four, the court may reasonably infer that the ALJ took into consideration the state agency doctors' opinions. Accordingly, Issues Two and Three do not warrant reversal of the Commissioner's decision.

### G.  ISSUES FIVE AND SIX: RESIDUAL FUNCTIONAL CAPACITY ASSESSMENT AND COMPLETE HYPOTHETICAL QUESTION

Finally, Plaintiff asserts in Issue Five that the ALJ did not properly consider Plaintiff's RFC in light of the doctors' opinions. [JS 15-16.] Likewise, Plaintiff contends in Issue Six that the ALJ failed to pose a complete hypothetical question to the vocational expert based on Plaintiff's RFC, taking into account these opinions. [JS 17-19.]  Plaintiff's claims are without merit.

Upon remand, the ALJ found that Plaintiff's depression, anxiety, and panic disorder were "severe" impairments. [AR 280.] Accordingly, the ALJ continued with the five-step evaluation, and found that Plaintiff had the residual functional capacity to perform light work, except the work should consist of simple, repetitive, non-public tasks. [AR 281.]

The ALJ held an administrative hearing on January 6, 2009, in which he asked the vocational expert about an individual with Plaintiff's vocational background, age, education, and work experience, who was capable of performing light work. [AR 327.] In addition, the ALJ asked the vocational expert to consider mental limits, namely that the work should consist of only simple, routine, repetitive, non-public tasks. [Id.]

Plaintiff argues that the ALJ erred in the RFC finding and hypothetical question since he did not take into consideration the opinions of Drs. Maze, May, and Mallare. [JS 16.]  However, as discussed in Issues Two, Three, and Four, the ALJ did consider the records of the three doctors, and issued a decision consistent with their opinions.  Hence, the ALJ did not err in finding an RFC of light work that should consist of only simple, routine, repetitive, non-

1  public tasks.  Moreover, since the RFC is not in error, all of
2  Plaintiff's limitations were accounted for in the question the ALJ
3  posed to the vocational expert.  Accordingly, Issues Five and Six do
4  not warrant reversal of the Commissioner's decision.

## V.  ORDERS

Accordingly, **IT IS ORDERED** that:

1. The decision of the Commissioner is **AFFIRMED**.
2. This action is **DISMISSED WITH PREJUDICE**.
3. The Clerk of the Court shall serve this Decision and Order and the Judgment herein on all parties or counsel.

DATED: October 26, 2010


CARLA M. WOEHRLE
United States Magistrate Judge